UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 10-60170-CIV-MORENO

MANAGED CARE SOLUTIONS, INC.,

    Plaintiff,

vs.

COMMUNITY HEALTH SYSTEMS, INC.,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

This is a breach of contract dispute between a Tennessee holding company whose subsidiaries own dozens of hospitals throughout the country and a Florida health care consulting company that provides billing collection services to hospitals. These companies had a contract for Plaintiff, the consulting company, to provide billing collection services to at least two of Defendant's hospitals. The consulting company sued for breach of contract after the hospital system unilaterally terminated their contract in early 2005.

### I. Background

Defendant, Community Health Systems, is a holding company with subsidiaries and affiliates that own and operate hospitals throughout the country. Plaintiff, Managed Care Solutions, is a vendor that assists hospitals in collecting receivables from third-party payors, such as insurance companies, who fail to pay all or part of a bill. In order to perform these services, Plaintiff has to receive protected health information from Defendant. In January, 2005, a contractor of the Plaintiff was investigated, and subsequently charged and convicted, with misusing protected health information, including patient social security numbers. Although the compromised health

information did not belong to patients of the Defendant's hospitals, the Defendant responded to the criminal investigation by immediately terminating its contract with the Plaintiff on February 2005.

Throughout their business dealings, the parties executed three documents relevant to this dispute. Plaintiff alleges that Defendant breached all three of these; Defendant argues that Plaintiff has no cause of action under a proper interpretation of these contracts. Plaintiff seeks damages for breach of contract, arguing that Defendant improperly terminated the contract. The parties also dispute the number of hospitals for which Plaintiff was contracted to provide services, and which services they had a right to provide exclusively.

The main contract, the Professional Services Agreement ("PSA"), retained Plaintiff to provide services to, at least, one of Defendant's hospitals, Brandywine Hospital in Pennsylvania. The PSA forms the core contract between the parties, and its correct interpretation is the source of two disputes between the parties. First, the parties dispute whether the PSA granted Plaintiff the exclusive right to provide services just to Brandywine Hospital or to all of its hospitals. Second, the parties dispute whether Plaintiff had the right to exclusively provide all services described in the PSA, or whether the exclusivity provision only applied to one of three services listed in the PSA.   Contemporaneous with the execution of the PSA, the parties also signed a HIPAA Business Associate Contract Addendum ("HIPAA Addendum"). It is in this HIPAA Addendum that Defendant cites a clause granting it the right to immediate termination of the contract if the Plaintiff, or its agents, misuse protected health information. While the Plaintiff does not dispute this interpretation of the clause, it disputes that the identity theft conviction of its contractor classified as the misuse of protected health information and that therefore Defendant did not have a right to immediate termination. Plaintiff argues that this termination provision was not triggered by the actions of their contractor, and thus the termination provision of the PSA should govern. That provision required Defendant to

provide Plaintiff with 120 days written notice and a chance to cure the breach before termination.

The parties later executed a subsequent addendum to the PSA that retained Plaintiff's services to provide the same two distinct services to a second hospital, Memorial Hospital of Salem County in New Jersey ("Salem Addendum"). The parties have different interpretations of what impact this Salem Addendum has upon the interpretation of the PSA's exclusivity provision. Plaintiff alleges that the Salem Addendum is proof that, over a period of time, Defendant would retain Plaintiff's services exclusively for the entire network of hospitals via Addendums to the PSA. The Defendant responds that the Salem Addendum is proof of the opposite - that the PSA only granted exclusivity as to Brandywine Hospital, and Addendums were necessary for each and every additional hospital but would not be granted automatically.

## II. Standard of Review

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss pursuant to Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006), accepting the well-pleaded facts of the complaint "and all reasonable inferences therefrom . . . as true," *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). Nevertheless, "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted). A complaint must have "enough facts to state a claim to relief that is plausible on its face;" if it does not "nudge[] the[] claims across the line from conceivable to plausible, [it] must be

dismissed." *Id.* at 570.

## III. Discussion

As a preliminary matter, the Court will start by addressing the Defendant's procedural arguments regarding venue, the Plaintiff's standing in this District, and the statute of limitations for breach of contract claims. For the reasons described below, the Court does not find merit to Defendant's arguments that any of these issues requires the dismissal or transfer of this action. Accordingly, the analysis continues on to the substantive arguments of the Defendant's motion regarding whether the Plaintiff has marshaled enough facts to sufficiently state a claim for breach of contract.

### A. Standing

The Defendant argues that the Plaintiff strategically filed suit in this District because it lacks standing to pursue its claim in federal courts in New Jersey and Pennsylvania because it does not have Certificates of Authority to conduct business required to maintain an action in those states. Defendant argues that this Court should not allow Plaintiff to circumvent the standing requirements of those states by granting it standing here.

Plaintiff responds by citing Pennsylvania and New Jersey statues that declare that failure to obtain a certificate of authority does not impair the validity of any contract or act of a corporation. 15 Pa. C.S. §4141(b); N.J.S. 14A:13-11(2). In addition, Plaintiff argues that it is not required to have those Certificates because it does not do business in those states, and that its lack of standing in those states has no relevance to its standing in this District.

The statutes of Pennsylvania and New Jersey are clearly not intended to affect foreign corporations' standing to bring suit in other federal districts arising out of contracts with residents of those two states. The statutes are not relevant to a standing analysis in this case, and in all other

-4-

respects, Plaintiff has satisfied the standing requirements.

## B. Venue

The Defendant argues that venue is not proper in this District, although it does not dispute that it is subject to personal jurisdiction in the state of Florida. Once the Defendant has challenged venue, "[t]he Plaintiff bears the burden of proof to show that venue is proper in the chosen forum." *Northeast Fla. Telephone Co. V. T-Mobile USA*, 2006 WL 3162456, *1 (M.D.Fla. 2006). Plaintiff has satisfied this burden under two different sections of the federal venue statute: 28 U.S.C. §1391(a)(2) and 28 U.S.C. §1391(c).

*1. 28 U.S.C. §1391(a)(2): Location of Substantial Part of the Events Giving Rise to the Claim*

"A civil action wherein jurisdiction is found only on diversity of citizenship may...be brought only in...(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(a)(2).

The Eleventh Circuit has given guidance on which district has the best claim to venue when there are two or more districts in which venue could be proper. "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Company v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). In a case in this district involving this same Plaintiff, Judge Seitz ruled that "a plaintiff is not required to select the venue with 'the most substantial nexus to the dispute;' it must simply choose a venue where a substantial part of the events giving rise to the claim occurred." *Managed Care Solutions v. Essent Healthcare, Inc.*, No. 09-60351, 3 (S.D.Fla. July 13, 2009)(citing *Gulf Power Co. v. Coalsales II, LLC*, 2008 WL 563484 *5 (N.D. Fla. 2008)).

Venue is proper in this district because a substantial part of the events and omissions giving

rise to the claim occurred here. First, Plaintiff alleges the breach of contract occurred in this district when Defendant improperly withheld from Plaintiff, and refused to provide, the data it needed to provide its services to the remaining hospitals in Defendant's network. Second, the contract was substantially performed here. The contract was partially negotiated in this district when Defendant's Vice-President traveled to Florida to review Plaintiff's office and operations and complete contract negotiations. The contract services were performed in Plaintiff's sole office in Hollywood, Florida. Plaintiff's employees performed their operations remotely in Florida and provided Defendant with necessary documentation of their services electronically or via mail from Florida. Throughout the term of the contract, Defendant obtained and exercised remote access to Plaintiff's work product that was located on computer servers in this district, and placed approximately ten to twenty calls to Plaintiff's Florida office each week. Defendant's bi-monthly invoices were issued from Florida, and Defendant's regular check payments were mailed to Florida.

In the aforementioned breach of contract case involving this same Plaintiff, Judge Seitz found that venue existed in this district based on nearly identical facts as are present here. In *Managed Care Solutions*, Judge Seitz found that venue was proper in this district under 28 U.S.C. 1391(a)(2) based on three factors: (1) the contract was brokered and negotiated in Hollywood, Florida; (2) the contracted services were provided from Hollywood, Florida; (3) the breached occurred when the client "failed to transfer account receivables and payments to Hollywood, Florida." *Managed Care Solutions*, at 4. In the instant case, the Plaintiff has alleged all these same factors and more, making venue here proper.

Defendant argues that venue is proper in New Jersey and/or Pennsylvania for three reasons: (1) it is where Plaintiff's contractor was caught engaging in identity theft, which Defendant alleges was the true reason for the contract termination; (2) Plaintiff hired temporary employees in New

-6-

Jersey and Pennsylvania during the initial implementation phase of the contract; (3) the breach occurred when the New Jersey and Pennsylvania hospitals refused to continue providing Plaintiff with the information necessary to perform its billing collection services. Alternatively, the Defendant argues that venue is proper in the Middle District of Tennessee, where the decision to terminate the contract was made at Defendant's headquarters, or in Delaware, where Defendant is incorporated.

Defendant is not incorrect in suggesting these four other districts as alternate venues. There were certainly some events giving rise to the breach of contract claim that occurred in some of these states. But venue can be proper in more than one District, and this District is a more convenient forum than those states where few relevant documents or witnesses are located. Many important witnesses and documents related to this cause of action are located here, including all of Plaintiff's witnesses. If it seeks to transfer the case, Defendant carries the burden of demonstrating that another district would be a more convenient forum for this case. *See In re Rich Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). In the Eleventh Circuit, the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations. *Robinson v. Giarmarco &Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). The Defendant has not shown reasons for which other districts would be more convenient, as opposed to just being equally proper places for venue.

*2. 28 U.S.C. §1391(c): Personal Jurisdiction*

"For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §1391(c)

The Defendant did not challenge personal jurisdiction in the state of Florida in its pre-answer motion. Under Fed.R.Civ.P. 12(h)(1), a Defendant waives the defense of lack of personal jurisdiction

unless it is timely made in a responsive pleading. Because Defendant has waived this challenge, it is now subject to personal jurisdiction in Florida. Moreover, Plaintiff argues that the Defendant is subject to personal jurisdiction within the state of Florida under Florida's long-arm statute.

Because personal jurisdiction is not at issue, Plaintiff convincingly counters Defendant's arguments that venue is not proper in this district under 28 U.S.C. §1391(c). Generally, this section of the federal venue statute "equates jurisdiction with venue, for corporate defendants." *Laumann Mfg. Corp. v. Castings USA*, 913 F.Supp. 712, 719 (E.D.N.Y. 1966). Moreover, because personal jurisdiction over Defendant was established under Florida's long-arm statute, Defendant's contacts with this district were "frozen" in time and "stand ready" to supply jurisdiction and venue up to the time the action was commenced. *See Sun Drilling Products Corp. v. Texas Mexican Ry. Co.*, 2004 WL 2256070, at *6 n.7 (E.D. La. 2004)(quoting David D. Seigel, Commentary on the 1988 and 1990 Revisions of Section 1391, Commencement of Action Is Key Time in Measuring Jurisdiction, quoted in 28 U.S.C. 1391 (1993)). Whether or not Defendant has current contacts to this district are irrelevant for a venue analysis because personal jurisdiction has been established under Florida's long-arm statute.

Defendant disputes that venue is proper in this district by arguing that when a state has multiple federal districts, as Florida does, venue must be based on contacts with the forum district even if the state's long-arm statute subjects the Defendant to personal jurisdiction within the state. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). Accordingly, the Defendant argues that venue is not proper because it was not subject to personal jurisdiction in *this* District at the time this suit was commenced, as required by 28 U.S.C. §1391(c). The Defendant alleges it has not had contacts with this District in the five years prior to the contract termination, and that this temporal requirement is critical if the words "at the time the action is commenced" are to have

-8-

meaning.

However, the cases that the Defendant cites in support of this argument are not on point to this issue and Defendant's legal arguments are otherwise unsupported. *Bigio v. United States*, 710 F. Supp. 790 (S.D. Fla. 1988) involves a different federal venue statute, 26 U.S.C. §7429(e)(1), which defines venue in the context of an individual person and their residency. The opinion explicitly states that this section does not apply to corporations, and discusses how venue is established under a residency analysis. The Plaintiff in the instant case does not seek to establish venue by arguing that Defendant is a resident of this District, but by arguing that Defendant has submitted to personal jurisdiction here by waiver and that Defendant is subject to jurisdiction in Florida because of Florida's long-arm statute.

*Ferris v. Rollins College Inc.*, 2008 WL 4569872 (N.D. Fla. 2008) does analyze the same venue statute at issue here, but offers no illumination on the Defendant's argument regarding the temporal aspect in the venue statute. *Ferris* delves into the "minimum contacts" required for a Defendant corporation to be subject to general personal jurisdiction within a district when it is subject to personal jurisdiction within a state that has more than one district. *Ferris*, 2008 WL 4569872 at *2-3. The Defendant in *Ferris*, a college, had current contacts with students and alumni in the Northern District of Florida, and did not mount its defense on the basis that it had no current contacts with that district. Instead, its argument was that its contacts were insufficient to satisfy the "minimum contacts" standard established by *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945).

Finally, Defendant cites *Bremer* for the proposition that personal jurisdiction and venue require different inquiries in at least one respect, the temporal requirement. However, this case analyzes the situation where a substantial part of the events giving rise to the claim occurred

throughout several districts, not where the Defendant claimed to not have had contact with the district at the time the claim was filed. *Bremer* does not provide Defendant's temporal argument with any support.

## C. Statute of Limitations

Defendant argues that any cause of action for breach of the contract's exclusivity provision would have accrued before February 4, 2005, the date Plaintiff alleges the breach occurred, and is therefore time-barred. Defendant reasons that if they were contractually required to use Plaintiff's services on their entire network of hospitals, then only Plaintiff should have been providing billing collection services by July 31, 2003, per the contract terms. But because Defendant had retained Plaintiff's services for only two of their hospitals by this date, and was otherwise using other companies or performing the services internally, Plaintiff's claim for breach of the exclusivity provision would have become ripe by July 31, 2003.

Plaintiff responds that the contract did not require the full implementation of services at all hospitals by July 21, 2003, but only the implementation of services at the pilot hospital. Plaintiff interpreted the contract as establishing the core terms that would apply to each hospital, with the understanding that addendums would be created for each new hospital that retained their services in the future with each addendum creating a new three-year contract for that hospital. Plaintiff points to February 4, 2005 as the date of the breach for a statute of limitation's analysis; this is the date on which Defendant terminated the contract and began refusing to provide Plaintiff with the data it needed to provide its services. Plaintiff argues that if Defendant had not terminated the contract on this date, Plaintiff would have received addenda for each of the remaining hospitals.

Taking Plaintiff's allegations as true, there is ambiguity in the contract terms as to when Plaintiff was to begin as the exclusive provider of services to Defendant's various hospitals. Plaintiff

-10-

has posited facts supporting their breach of contract claim, which is ultimately tied up with this statute of limitations issue. The contract section in dispute is reasonably susceptible to more than one interpretation, and thus this issue should be decided at the summary judgment stage and the motion to dismiss on this basis should be denied. "Whether a contract is or is not ambiguous is a question of law to be determined by the trial court."*Ocean Reef Club, Inc. v. UOP, Inc.*, 554 F.Supp. 123, 128 (S.D. Fla.1982). This Court has previously denied a motion to dismiss where the parties disputed the proper interpretation of their contract. In *Larach v. Standard Chartered Bank Intern. (Americas) Ltd.*, 724 F.Supp.2d 1228, 1239 (S.D.Fla. 2010), this Court denied a motion to dismiss because the Plaintiff had "sufficiently alleged the required elements for claims of breach of contract"and the differing interpretations of the contract was not yet ripe for ruling. *Id.* This Court gave the *Larach* parties leave to renew their arguments at the summary judgment stage.

### D. Elements of a Breach of Contract Claim

Under Florida law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000).

### 1. Valid Contract: Undisputed

The Plaintiff has pled that the contract between the parties was valid, and the Defendant has not disputed this statement.

### 2. Material Breach

Plaintiff alleges that the Defendant breached the contract in two ways. First, the Defendant breached by improperly terminating the contract without having knowledge that Plaintiff had materially breached or without giving Plaintiff 120 days prior written notice or an opportunity to cure. Second, Defendant breached the exclusivity provision of the contract by retaining other

-11-

companies to perform the services that Plaintiff had been contracted to perform exclusively to Defendant's entire hospital network.

### a. The Defendant's Right to Terminate the PSA

As to the first alleged breach, Defendant argues that they had the right to an immediate termination under the HIPAA Addendum because Plaintiff failed to adequately protect health information as evidenced by the criminal actions of Plaintiff's contractor. To justify their termination Defendant cites §11(b) of the HIPAA Addendum, which allows for immediate termination of the underlying contract (e.g., the PSA) if Plaintiff materially breached the contract (e.g., by failing to appropriately handle protected health information). Defendant argues that this termination provision governs because it is more specific to the circumstances surrounding the termination than the more general termination provision found in the PSA.

Plaintiff argues that the HIPAA termination provision was not triggered by the actions of their contractor, and thus the termination provision of the PSA, §9.2, should govern. That provision required Defendant to provide Plaintiff with 120 days written notice and 90 days to cure the breach before termination. Plaintiff alleges that Defendant's reliance on the HIPAA Addendum's termination provision is a pretext because Defendant wanted to find a way to end their contract.

Even if the HIPAA provision governs, Plaintiff argues that the actions of their contractor was not sufficient grounds for immediate termination under that provision. Plaintiff argues that their contractor did not use protected health information from Salem Hospital to commit identity theft, but that she obtained her victims' information from a street source. Plaintiff cites documentation from their contractor's police record that confirm that the victims were not patients at Salem and that their information was obtained outside the context of the hospital. In addition, Plaintiff alleges that their contractor's job did not require her to review files containing patients' financial information, making

it unlikely that her criminal activity stemmed from her job at Salem.

### b. The Exclusivity Provision

As to the second alleged breach, there are two disputes regarding the PSA's exclusivity provision. First, the parties dispute whether the PSA granted Plaintiff the exclusive right to provide services to all of its hospitals or just to Brandywine Hospital. Second, the parties dispute whether the PSA granted Plaintiff exclusivity rights as to all of the services in the PSA, or just some of them.

As to the first dispute, the Plaintiff interprets the contracts as granting it the exclusive right to provide services to the entire network of hospitals which Defendant owns. The Plaintiff has pointed out sections of the contract that make this interpretation plausible: Exhibit A of the PSA states that Plaintiff's services would be provided "system-wide" and that the PSA made repeated references to "each facility," demonstrating the parties' understanding that the PSA would eventually apply to all of the facilities. The Defendant has a different interpretation of the contract: that the exclusivity provision applied to only two of their hospitals, not to all of them. The Defendant points out that the recitals to the PSA refers specifically and exclusively to the Brandywine Hospital in New Jersey, and that the existence of the Salem Addendum demonstrates that the PSA only applied to Brandywine. Defendants argue that, at most, the parties had reached an "agreement to agree." These contract provisions are ambiguous and susceptible to more than one interpretation.

As to the second dispute, Plaintiff alleges it had the right to exclusively provide all services described in the PSA, while Defendant responds that the exclusivity provision did not apply to appeals or collection services. The provision in dispute is §8 of the PSA: "[Plaintiff] shall have the sole and exclusive right to perform the services described in Section 2, Exhibit A." The dispute boils down to what the contract is referring to by "Section 2, Exhibit A." Defendant argues that it refers only to Section 2 of Exhibit A, the "Denial Prevention Program," but not to Section 1 or Section 3

-13-

of that Exhibit A. Plaintiff argues that this interpretation is inconsistent with the terminology and citation format that the parties used throughout the rest of the contract. Instead, Plaintiff interprets the provision to refer to the entirety of Section 2 of the contract, which in turn refers to "services as described in Exhibit A." Plaintiff's interpretation of the provision would grant them exclusivity over all of the services contained in Exhibit A, while Defendant's interpretation would grant them exclusivity only over one section of Exhibit A. Again, the contract provisions at issue are ambiguous and susceptible to more than one interpretation.

### c. Contract provisions are ambiguous

Defendant has failed to demonstrate that Plaintiff has not met this element of its breach of contract claim, only that Defendant has a different interpretation of their contract. Taking the allegations as true, the Plaintiff has established a plausible cause of action for breach of contract. As stated above in the statute of limitations analysis, Plaintiff has pled sufficient facts to support its allegation that Defendant materially breached the contract in two ways. A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a the motion to dismiss.

### 4. Damages

Plaintiff has undeniably put forth facts that support its claim for damages. Depending on the proper interpretation of the contract's exclusivity and immediate termination provisions, the extent of damages will vary. But taking Plaintiff's allegations as true, it has demonstrated damages resulting from Defendant's breach.

### III. Conclusion

THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss **(D.E. No.**

of that Exhibit A. Plaintiff argues that this interpretation is inconsistent with the terminology and citation format that the parties used throughout the rest of the contract. Instead, Plaintiff interprets the provision to refer to the entirety of Section 2 of the contract, which in turn refers to "services as described in Exhibit A." Plaintiff's interpretation of the provision would grant them exclusivity over all of the services contained in Exhibit A, while Defendant's interpretation would grant them exclusivity only over one section of Exhibit A. Again, the contract provisions at issue are ambiguous and susceptible to more than one interpretation.

### c. Contract provisions are ambiguous

Defendant has failed to demonstrate that Plaintiff has not met this element of its breach of contract claim, only that Defendant has a different interpretation of their contract. Taking the allegations as true, the Plaintiff has established a plausible cause of action for breach of contract. As stated above in the statute of limitations analysis, Plaintiff has pled sufficient facts to support its allegation that Defendant materially breached the contract in two ways. A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a the motion to dismiss.

#### 4. Damages

Plaintiff has undeniably put forth facts that support its claim for damages. Depending on the proper interpretation of the contract's exclusivity and immediate termination provisions, the extent of damages will vary. But taking Plaintiff's allegations as true, it has demonstrated damages resulting from Defendant's breach.

### III. Conclusion

THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss **(D.E. No.**

49), filed on **March 18, 2011**.

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED with leave for the parties to renew their contract interpretation arguments at the summary judgment stage. The Plaintiff has sufficiently put forth facts supporting its claim for breach of contract. The contract at issue is susceptible to more than one interpretation, and Plaintiff's proffered interpretation is sufficient to support a breach of contract claim.

DONE AND ORDERED in Chambers at Miami, Florida, this  1st  day of December, 2011.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record