UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 10-60170-CIV-MORENO/OTAZO-REYES

MANAGED CARE SOLUTIONS, INC.,

    Plaintiff,

v.

COMMUNITY HEALTH SYSTEMS, INC.,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court upon Defendant Community Health Systems, Inc.'s ("CHS") Renewed Motion for Final Summary Judgment (hereafter, "Renewed Motion") [D.E. 252]. This matter was referred to the undersigned by the Honorable Federico A. Moreno, Chief United States District Judge for the Southern District of Florida, pursuant to 28 U.S.C. § 636(b) [D.E. 156]. Upon a thorough review of the record, the undersigned finds that disputed issues of material fact preclude issuance of a judgment as a matter of law in favor of CHS. Accordingly, the undersigned respectfully recommends that CHS's Renewed Motion be DENIED.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Managed Care Solutions, Inc. ("MCS") is in the business of assisting hospitals in collecting receivables from third-party payors, such as insurance companies, who fail to pay all or part of a patient's hospital covered charges. CHS is a holding company with subsidiaries and affiliates that own and operate hospitals throughout the country. As previously established in this case, the contract between the parties at issue--the Subject Contract--refers to the

following:

1. A "Professional Services Agreement" (hereafter "PSA") executed by CHS and MCS on July 21, 2003, specifically naming a single CHS hospital known as Brandywine Hospital ("Brandywine"), located in Pennsylvania [D.E. 242-1];

2. A HIPAA Business Associate Contract Addendum (hereafter "HIPAA Addendum") executed on the same date [D.E. 242-2]; and

3. An addendum to the PSA dated October 14, 2003, making the PSA applicable to a second CHS hospital known as Memorial Hospital of Salem County in New Jersey (hereafter "Salem Addendum") [D.E. 242-3].

Under the Subject Contract, MCS was to provide accounts receivable services at two hospitals in CHS's network, Brandywine and Memorial Hospital of Salem County ("Salem"). The following provisions of the Subject Contract are pertinent to the parties' dispute:

Paragraph 11 of the HIPAA Addendum states:

11. Termination for Cause. Upon Hospital's knowledge of a material breach by Vendor of this Addendum, Hospital shall either:

a. Provide an opportunity for Vendor to cure the breach or end the violation and terminate this Addendum and the [insert name of original Agreement] if Vendor does not cure the breach or end the violation within the time specified by Hospital,

b. Immediately terminate this Addendum and the [insert name of original Agreement], or

c. If neither termination nor cure are feasible, Hospital shall report the violation to the Secretary.

HIPAA Addendum [D.E. 242-2 at 5].

The HIPAA Addendum further provides that MCS "may not use or otherwise disclose Protected Health Information . . . it receives from the Hospital for any purpose" other than as allowed by the PSA or permitted by HIPAA Regulations, and further that MCS "may not . . . use or disclose Protected Health Information in the manner that violates or would violate the HIPAA Regulations if such activity were engaged in by Hospital." Id. at 2. It also requires MCS to

2

"implement and maintain . . . such safeguards as are necessary to ensure that the Protected Health Information disclosed by Hospital to [MCS] is not used or disclosed by [MCS] except as is provided in the Agreement." Id. at 3. MCS warranted to Defendant its compliance with these HIPAA requirements in the HIPAA Addendum. Id.

> Section 9.2 of the PSA states:
>
> 9.2 Termination. CLIENT or MCS may terminate this Agreement upon one hundred twenty (120) days prior written notice to the other party if there is a breach of any material term or condition of this Agreement which remains uncured for ninety (90) days after receipt of written notice of such breach setting forth the basis thereof. The effective date of any such termination shall be ninety-one (91) days after the date of the written notice from such party. In the event the alleged breach cannot reasonably be cured in0 (sic) ninety (90) calendar days, such cure period shall be extended so long as the breaching party is working diligently to cure such breach.

PSA [D.E. 242-1 at 5-6].

In furtherance of the parties' agreement, Nichole Scott ("Scott") was placed at Salem by a temporary employment agency hired by MCS on October 13, 2004. She ceased working there on October 29, 2004. In January 2005, the Delaware State Police ("DSP") began investigating Scott for identity theft. Scott's home was searched on January 25, 2005 and she was arrested that same day. On February 4, 2005, CHS terminated the Subject Contract by sending a letter to MCS citing as the reason "the arrest of MCS employee, Nichole Scott for identity theft" involving Protected Health Information (PHI) of Salem patients. See Termination Letter [D.E. 112-16 at 2].

In its Third Amended Complaint [D.E. 242], as it did in prior pleadings, MCS asserts a claim for breach of contract against CHS and alleges that CHS improperly terminated the Subject Contract on February 4, 2005.[1] MCS claims that CHS did not have, at that time, the requisite knowledge for immediate termination under Paragraph 11(b) of the HIPAA Addendum, and that

---

[1] This breach of contract claim is the only one that has survived prior rulings issued in this case.

3

MCS was not given 120 days prior written notice with an opportunity to cure, as required by Paragraph 9.2 of the PSA. However, CHS claims that it properly terminated the Subject Contract based on MCS's breach of the HIPAA Addendum through the actions of Scott.

CHS had previously moved for summary judgment on this improper termination claim, but the undersigned recommended that the motion be denied because there were disputed issues of material fact with regards to: 1) whether Scott had access to and took the PHI from Salem, and 2) whether CHS had the requisite knowledge of Scott's alleged theft at the time of termination. See Report and Recommendation [D.E. 169 at 14-15]. The Report and Recommendation was affirmed and adopted on June 4, 2012 [D.E. 194].

The parties have since conducted the depositions of Nichole Scott and two Delaware State Police detectives who were involved in Scott's identity theft investigation, Tonya Armstrong-Widdoes ("Widdoes") and Patricia Sennet-Wysock ("Wysock"). In its Renewed Motion, CHS argues that the testimony from these depositions has resolved the issues of fact that precluded granting its prior motion for summary judgment. Specifically, CHS contends that there is no longer any issue of material fact with respect to: 1) whether Scott took copies of patient checks from Salem; 2) whether Scott took patient credit card and social security numbers from Salem; 3) whether CHS had knowledge of MCS's breaches; and 4) whether Scott's conduct constituted a violation of HIPAA and the requisite material breach of the HIPAA Addendum. As a result, CHS moves for summary judgment as to MCS's single breach of contract claim. As more fully explained below, however, the undersigned finds that disputed issues of material fact still preclude issuance of a judgment as a matter of law in favor of CHS.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1232 (11th Cir. 2011) (internal citation and quotation marks omitted). The "genuine issue summary judgment standard is very close to the reasonable jury directed verdict standard . . . . In essence [] the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (internal citation and quotation marks omitted).

In considering a motion for summary judgment, a court is to view the facts and draw "all reasonable inferences in favor of the nonmoving party." Reese, 637 F.3d at 1231; see also Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998) (stating that the court is "required to view the facts in the light most favorable to the nonmovant"). A court should not grant summary judgment "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." Cornelius v. Town of Highland Lake, Ala., 880 F.2d 348, 351 (11th Cir. 1989), *overruled* on other grounds by White v. Lemacks, 183 F.3d 1253 (11th Cir. 1999). "All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." Pippin v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 845 F. Supp. 849, 850 (M.D. Fla. 1994).

### III. DISPUTED MATERIAL FACTS

Contrary to CHS's contention, the undersigned finds that the depositions of Scott, Widdoes and Wysock have not resolved the issues of material fact that precluded granting CHS's prior motion for summary judgment and further finds that the deposition testimony does not

5

support CHS's purportedly undisputed facts.

### 1. Whether Scott took copies of patient checks from Salem.

CHS argues that the following facts establish that Scott took copies of patient checks from Salem: 1) Scott worked in Salem's Business Office for approximately three weeks; 2) on January 25, 2005, DSP found at Scott's home copies of thirty-two checks made payable to Salem during the time that Scott worked at Salem and a blue "batch header" bearing Salem's name; 3) Salem's Assistant CFO, Don Bevers ("Bevers"), received a call from DSP on January 28, 2005 advising him that Scott had been arrested for identity theft, and that copies of checks payable to Salem, the blue "batch header," and multiple credit card and social security numbers had been found in Scott's home, and that Scott had used the numbers to make unauthorized credit purchases; 4) on January 28, 2005, someone from DSP faxed to Bevers a copy of the list of the checks and blue "batch header," and shortly thereafter, Bevers received copies of the checks in the mail; and 5) a search of Salem's files determined that the same batch of checks was missing. In support of these facts, CHS proffers deposition testimony from Widdoes during which, according to CHS, Widdoes confirmed, "no fewer than nineteen times," that copies of the thirty-two checks that were payable to Salem and a blue "batch header" bearing Salem's name were found in Scott's home. Renewed Motion [D.E. 252 at 5]. CHS also contends that it was Wysock who prepared the list of checks and faxed it to Bevers. Id.

In opposition, MCS points to Scott's deposition testimony that she did not take copies of any checks from Salem and her allusion to the possibility of her husband having taken copies of checks. See Scott Deposition Transcript [D.E. 253-2 at 34:9-14]. MCS also points to different portions of Widdoes's deposition testimony where she stated that she had only a "vague" recollection of the events and that she would need to look at the evidence log to be "absolutely

6

certain" of what was found in Scott's home. Response in Opposition [D.E. 257 at 5-6]. Finally, MCS points to the testimony of Gene Lee ("Lee"), the CHS Regional Director for Patient Financial Services, that collection records at Salem were "a mess,"[2] and to CHS documents that mention missing documents and checks[3] to contradict CHS's contention that the checks were missing solely because Scott stole them.

Given this evidentiary record, the undersigned would need to assess the credibility of the witnesses and, in particular, that of Scott, in order to find as an undisputed fact that Scott took copies of patient checks from Salem. However, "[i]t is a hornbook principle that it is not proper for a district court to assess witness credibility when consideration [sic] a motion for summary judgment as such determinations are reserved for the jury." Allen-Sherrod v. Henry County School Dist., 248 Fed. App'x 145, 147-48 (11th Cir. 2007).

### 2. Whether Scott took patient credit card and social security numbers from Salem.

CHS contends that DPS also recovered credit card and social security numbers of Salem patients from Scott's home. According to CHS, Widdoes confirmed at her deposition that the credit card and social security numbers were found in Scott's home and that she prepared a list cataloging the numbers as part of her investigation. See Widdoes Deposition Transcript [253-4 at 25:25-28:22]. However, MCS points to Scott's denial of taking patient information from Salem. See Scott Deposition Transcript [D.E. 253-2 at 58:25-60:18, 114:8-12]. Further, MCS notes Widdoes's statements that she had no knowledge of whether the list of credit card numbers was ever sent to anyone at Salem. See Widdoes Deposition Transcript [253-4 at 180:6-14]. Thus, as with the patient checks, the undersigned cannot find as an undisputed fact that Scott took patient credit card and social security numbers from Salem without assessing witness

---

[2] See Lee Deposition Transcript [D.E. 127-1 at 64].
[3] See Internal CHS Documents [D.E. 127-1 at 117-160].

credibility. As noted above, this task is more properly left for the trier of fact. <u>Allen-Sherrod</u>, 248 Fed. App'x at 147-48.

### 3. Whether CHS had knowledge of MCS's breaches.

CHS relies primarily on the same facts it had cited in its prior motion for summary judgment to establish its knowledge of MCS's breach of the HIPAA Addendum, namely:

> ➢ That the termination letter sent to MCS on February 4, 2005 is "conclusive evidence" that CHS was aware of MCS's breaches at the time the contract was terminated.[4]
>
> ➢ That DSP called Bevers on January 28, 2005 and advised him that copies of checks payable to Salem had been recovered from Scott's home.
>
> ➢ That on January 28, 2005, DSP faxed the copies of the checks and blue batch header to Bevers.
>
> ➢ That Bevers stated that he had received phone calls from Salem patients who had either been contacted by the police or incurred unauthorized charges; and that he had been informed by DSP that Scott had personal information of numerous individuals in her home and that several of them had been victims of identity theft.
>
> ➢ That DSP also forwarded to Salem a report indicating that Scott had been arrested for making fraudulent charges on credit cards, which corroborated what DSP had already communicated to Salem regarding Scott's use of personal information taken from Salem to make unauthorized credit card purchases.

<u>See</u> Renewed Motion [D.E. 252 at 7-8]. The only new fact proffered by CHS is that Widdoes confirmed that DSP communicated with Salem by phone and fax. <u>See</u> Renewed Motion [D.E. 252 at 8 n.10].

MCS, however, points to the deposition testimony of Widdoes stating that she does not recall whether she informed anyone at Salem that Scott had taken protected health information,

---

[4] Specifically, CHS claims that the relevant portion of the letter states: "It is our understanding from the Delaware State Police Department that Nichole Scott wrongly and without authorization removed patient protected health information from The Memorial Hospital of Salem County and used such confidential information to obtain credit cards which she subsequently used to make purchases." Renewed Motion [D.E. 252 at 7] (quoting D.E. 112-16 at 2).

8

or whether anyone else at DSP had done so. See Widdoes Deposition Transcript [D.E. 253-4 at 183:24-185:8]. Wysock also did not recall at her deposition whether she spoke with Bevers. See Wysock Deposition Transcript [D.E. 253-5 at 16:15-22].

Thus, the new deposition testimony upon which CHS relies only serves to create credibility issues arising from the witnesses' memory failures seven years after the events occurred. Such credibility determinations must be made by the trier of fact. Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986) ("any failure of memory throughout the course of discovery create[s] an issue of credibility" that requires resolution by the trier of fact).

### 4. Whether Scott's conduct constituted a violation of HIPAA and the requisite material breach of the HIPAA Addendum

CHS also contends that there is no genuine issue of material fact that Scott's alleged conduct constituted improper uses and disclosures of PHI in violation of the HIPAA Addendum. CHS contends that the HIPAA Addendum provided that "MCS (and Scott) were subject to HIPAA during their tenure at Salem as if they were 'covered entities[]'" and that "[t]he HIPAA Addendum further gave Defendant the express right to immediately terminate the entire agreement based on a material breach of the HIPAA Addendum." Renewed Motion [D.E. 252 at 12]. Specifically, CHS contends that the following actions by Scott constituted a breach of the HIPAA Addendum: 1) looking through Salem's files in order to get patient checks and credit numbers and reviewing those files with mal intent, which was an improper use under HIPAA; 2) accessing patient information, such as social security numbers, with mal intent on Salem's computers, which would be an improper use under HIPAA; 3) searching Salem's computers for patients named Nicole and looking up social security numbers for individuals whose credit card numbers she had taken, which served no business purpose; 4) removing information from Salem and having it in her home, which served no business purpose and was thus an improper

9

disclosure; and 5) committing identity theft of at least eight Salem patients involving disclosure of their credit card and social security numbers or banking information, which was also an improper disclosure. See Renewed Motion [D.E. 252 at 12].

However, the same material issues of fact that pervade CHS's previous contentions preclude accepting CHS's proposed conclusions regarding Scott's and MCS's purported HIPAA Addendum violations.

## IV. RECOMMENDATION

Having addressed all of the material facts that CHS claims are undisputed and found them to be disputed, the undersigned respectfully recommends that Defendant's Renewed Motion for Final Summary Judgment [D.E. 252] be **DENIED**.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED in Chambers in Miami, Florida this 2nd day of April, 2013.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Chief United States District Judge Federico A. Moreno
Counsel of Record