UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **10-60170-CIV-MORENO**

MANAGED CARE SOLUTIONS, INC.,

    Plaintiff,

vs.

COMMUNITY HEALTH SYSTEMS, INC.,

    Defendant.
_____/

## ORDER ADOPTING IN PART MAGISTRATE'S REPORT AND RECOMMENDATION, AND GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Renewed Motion for Final Summary Judgment **(D.E. 252)**, filed on **October 19, 2012**, Magistrate's Report and Recommendation on Defendant's Motion for Summary Judgment **(D.E. 267)**, filed on **April 2, 2013**, and Pre-trial Conference held before the Court on **May 14, 2013**. The Court heard the Parties' arguments regarding the Magistrate's Report and Recommendation as well as Parties' theories of the case. Defendant argued that a combination of a recent set of depositions and previous evidence presented in pleadings eliminated genuine issues of material fact in the case. Plaintiff countered that issues of material fact remained present in the case, despite information garnered from the more recent and past depositions, and therefore summary judgment was inappropriate and the case should proceed to trial during the two-week period commencing **July 1, 2013**. Having considered Defendant's Renewed Motion for Summary Judgment **(D.E. 252)** and the most recent depositions **(D.E. 253)** in combination with previous filings of the parties and the Pre-trial Conference, this Court grants

summary judgment in favor of Defendant Community Health Systems, Inc.

## FACTUAL AND PROCEDURAL BACKGROUND

THE COURT adopts in its entirety the Procedural and Factual Background adeptly outlined in Magistrate's Report and Recommendation on Defendant's Renewed Motion for Summary Judgment. D.E. 267 at 1-4. In relevant part, the Report and Recommendation highlighted the contractual relationship between Plaintiff Managed Care Solutions, Inc. ("MCS") and Community Health Systems, Inc. ("CHS") governed by the Subject Contract. Based on this Court's Order Striking Complaint, Granting Leave to Amend Complaint and Continuing Trial (**D.E. 237**), entered on **September 19, 2012**, the Subject Contract included a Professional Services Agreement ("PSA"), a HIPAA Business Associate Contract Addendum ("HIPAA Addendum"), and an addendum to the PSA which made the PSA applicable to a second CHS hospital, Memorial Hospital of Salem County ("Salem Hospital") in New Jersey. Id. 1-2. Specifically, the Magistrate's Report and Recommendation underscored the crucial portion of the HIPAA Addendum, the violation of which is the subject of the case:

> Paragraph 11 of the HIPAA Addendum states:
>
> 11. Termination for Cause. Upon Hospital's knowledge of a material breach by Vendor of this Addendum, Hospital shall either:
>
> a. Provide an opportunity for Vendor to cure the breach or end the violation and terminate this Addendum and the [inset name of original Agreement] if Vendor does not cure the breach or end the violation within the time specified by Hospital,
>
> b. Immediately terminate this Addendum and the [insert name of original Agreement], or
>
> c. If neither termination nor cure are feasible, Hospital shall report the violation to the Secretary.

Id. at 2 (citation omitted).

Additionally, the Magistrate's Report and Recommendation referred to the essential consideration in the HIPAA Addendum that MCS, "may not use or otherwise disclose Protected Health Information...it receives from the hospital for any purpose," other than as permitted under the PSA or HIPAA regulations. Id.

The Magistrate's Report and Recommendation also distilled the undisputed facts that Nichole Scott worked at Salem Hospital through a temporary employment agency employed by MCS. She worked at Salem Hospital from October 13, 2004 to October 29, 2004. Delaware State Police executed a warrant to search Scott's home on January 25, 2005 and arrested her. Having learned of the Scott's arrest and the materials found in her home, on February 4, 2005, CHS terminated the Subject Contract citing, "the arrest of MCS employee, Nichole Scott for identity theft" pertaining to Protected Health Information of Salem patients. D.E. 267 at 3.

While the parties agree to the above set of facts, they agree to little else. After reams and reams of paper devoted to various motions, responses, and replies (the most recent entry was Docket Entry 273), the Parties' arguments remain essentially the same: MCS claims that CHS breached the Subject Contract through its immediate termination of the contract without knowledge of any material breach, and CHS maintains that its termination of the contract was proper in light of MCS's breach of the HIPAA Addendum in the Subject Contract. *See e.g.* D.E. 242 at 14.; *See e.g.* D.E. 250 at 26. As a result, with the Magistrate Judge's significant aid, this Court has been continually refining the outstanding issues of fact in the case. The Court previously considered the Parties' Cross Motions for Summary Judgment. D.E. 194. The Court agreed with the Magistrate's Report and Recommendation on the Cross Motions for Summary Judgment, which highlighted two remaining disputed issues of material fact: "1) whether Scott

had access to and took the PHI from Salem, and 2) whether CHS had requisite knowledge of Scott's alleged theft at the time of termination." D.E. 194 (citation omitted). Summary Judgment was not proper at that time.

Since the previous denial of the Parties' Cross Motions for Summary Judgment, the Parties have deposed Nichole Scott and two Delaware State Police officers involved with the Scott's identity theft investigation, Tonya Armstrong-Widdoes ("Widdoes") and Patricia Sennet-Wysock ("Wysock"). Consequently, Defendant CHS filed a Renewed Motion for Summary Judgment. D.E. 252.

## STANDARD OF REVIEW

The Court adopts in its entirety the Standard of Review set out by the Magistrate Judge in her Report and Recommendation on the Cross Motions for Summary Judgment and on Defendant's Renewed Motion for Summary Judgment. D.E. 169 at 6-7; D.E. 267 at 4-5. The Magistrate identified the relevant statute, Federal Rule of Civil Procedure 56(a), and the summary judgment standard set out by the Supreme Court in Celotex. FED. R. CIV. P. 56(a); Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The Magistrate Judge outlined the relatively high bar for a decision on summary judgment, "A court should not grant summary judgment '[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact.'" D.E. 267 at 5 (citation omitted). Nevertheless, the Magistrate Judge also explained that "despite these presumptions in favor of the non-moving party, a court must be mindful that the purpose of Rule 56 is to eliminate needless delay and expense to the parties and to the court occasioned by an unnecessary trial." D.E. 169 at 7 (citing Celotex, 477 U.S. at 322-23). As the Magistrate's Report and

Recommendation further elaborated, "Further, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant." D.E. 169 at 7 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Additionally, the Court heeds the Supreme Court's analysis of the summary judgment burden in Matsushita, "It follows from these settled principles that if the factual context renders respondents' claim implausible...respondents must come forward with more persuasive evidence to support their claim than would be otherwise necessary." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Supreme Court requires non-movants to "do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586.

With the above-referenced summary judgment standard in mind, the Court reviews the Magistrate's Report and Recommendation on Defendant's Renewed Motion for Summary Judgment *de novo* and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." Williams v. McNeil, 557 F.3d 1287, 1291 (11th Cir. 2009) (quoting 28 U.S.C. § 636(b)(1); Local Magistrate Rule 4(b).

## DISCUSSION

This Court denied the Parties' previous Cross Summary Judgment motions on the grounds that there were disputed issues of material fact pertaining to: "1) whether Scott had access to and took PHI from Salem, and 2) whether CHS had the requisite knowledge of Scott's alleged theft at the time of termination [of the contract]." D.E. 267 at 4. Considering the most recent set of depositions, those of Scott, Widdoes, and Wysock, in conjunction with the previously presented motions and deposition, this Court finds that there are no longer issues of

material fact with regards to Scott's violation of the HIPAA Addendum by improperly obtaining and using PHI or CHS's requisite knowledge of the HIPAA violation when it terminated its contract with MCS. Plaintiff MCS has provided no plausible alternative theory to the CHS' contention that Scott violated the HIPAA Addendum thereby allowing CHS to terminate its contract with MCS. As a result, summary judgment in favor of Defendant CHS is appropriate.

### A)   Scott took PHI from Salem

The Court first turns to the question of whether Scott had improperly used Salem PHI in violation of the HIPAA Addendum. The testimonies of Detectives Widdoes and Wysock combined with the circumstances under which specific evidence was discovered at Scott's home do not lead to any reasonable conclusion other than that Scott improperly obtained PHI in violation of the HIPAA Addendum. Although Detectives Wynsock and Widdoes did not recall at their deposition specific details of an investigation in which they took part seven years before, the Detectives' testimony presented evidence that checks belonging to Salem Hospital were discovered at Scott's home on January 25, 2013. D.E. 269 at 5 (citing testimony from Widdoes and Wynsock's depositions) (citation omitted). Wynsock also testified that three days later checks, which later were confirmed missing from Salem Hospital, were catalogued by Detective Wynsock as part of the materials recovered from Scott's home. Id. (citing testimony from Widdoes, Wynsock, and Bevers)(citation omitted). The dates of the missing checks corresponded to dates during Scott's three-week tenure at the hospital. Id. (citation omitted).

Detective Widdoes' deposition also revealed that credit card and social security numbers corresponding to Salem patients had been discovered at Scott's home. D.E. 252 at 5 (citation omitted). In fact, Widdoes' testimony, combined with previously submitted hospital records,

confirmed that the credit card numbers of 18 Salem Hospital patients were discovered in Scott's home. Id. (citation omitted). These credit card numbers were in Salem patient files dated between October 11 and 22, 2004, overlapping with the three-week period during which Scott worked at Salem. Id. In addition, the Social Security numbers of 32 Salem patients were found in Scott's home. D.E. 253 at 3, 8 (citations omitted). Of these 32 individuals, the social security numbers of half were contained in hospital files which were dated during Scott's three-week tenure. D.E. 252 at 5 (citation omitted).

Scott also has an extensive history of theft by deception. Scott was on probation for a conviction for "theft by deception" when she was hired by MCS to work at Salem Hospital. D.E. 253 at 2 (citation omitted). Moreover, on March 8, 2006, Scott plead guilty to three of 44 counts relating to identity theft, unlawful use of credit cards, theft, and forgery against eight Salem Hospital patients. Id. at 9 (citation omitted). Scott has been incarcerated at Edna Mahan Correctional Facility for this conviction since October 16, 2010. Id. at 2.

While the totality of the Defense's pleadings presents a strong case for summary judgment against the Plaintiff, it is Scott's inability to assert a plausible alternative to the Defense's contentions that ultimately renders summary judgment proper in this case. In its ruling in Anderson, the Supreme Court placed a small but not insignificant burden on the non-movant to present more than just a "scintilla of evidence" to defeat a summary judgment motion. Anderson, 477 U.S. 242, 251(1986). Ultimately, a jury has to be able to reasonably find for the non-movant. Plaintiff MCS is unable to present more than a mere scintilla of evidence in support of its proposition that Scott did not improperly obtain PHI from Salem Hospital in contravention of the HIPAA Addendum.

The Plaintiff argues that Scott did not take the PHI, and if PHI was found at her home, her husband placed it there. These two explanations offer no more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. 574, 587 (1986). Scott claims that she did not take checks, credit cards, and social security numbers of Salem patients. See, e.g. D.E. 253-2 at 33: 8-11. However, she does not deny that certain information belonging to Salem patients was found at her home. See, e.g. D.E. 253-2 at 72: 3-7 ("Q. With respect to N___, O___, tell me how you committed to find the first – A. The information was in my house. The warrant wasn't for me. Once again, when they came into my house, they found the information."); D.E. 253-2 at 109: 17-21 ("Q. Were they [credit card information] in your house or not in your house? A. I am looking at – you see I'm looking at them now, like – I'm like where did they come from? So, yes. They're saying that they were in my house. So, all right. But they wasn't in my possession.").

While Scott denies taking patient checks, credit card and social security information while working at Salem Hospital, her testimony reveals that patient information was at her home, but she could not explain how it got there. Scott's best explanation for the presence of patient information at her home was that she could not account for her husband's actions and that he was "a snake." D.E. 253-2 at 34: 6-14; 36: 13-16 ("Q. Why did you bring up that your husband came to your job at Salem Hospital? A. Because I know how he was, he was a snake. So, therefore, a lot of information that was in my house, it was in bags that was my husband's."). Although this Court does not rule out the possibility that Scott's husband was also involved in her fraudulent use of patient information, the facts do not support the contention that Scott's husband acted alone. Although Scott attempts to create a link between her husband and Salem, she concedes

that he did not enter the business office and only met her for lunch at the hospital a few times in the hospital cafeteria. D.E. 253-2 118:11-121:25. Ultimately, her implication of her husband in the use of patient information rests on coincidence. Scott testified that her husband could have obtained the patient information on the street or via the internet "because identity theft is big business." D.E. 258 at 2 (citation omitted). Plaintiff would have the Court believe that the presence of so much Salem patient information at Scott's home was mere coincidence. Even viewing the facts in the light most favorable to the Plaintiff, this Court can reach no other conclusion and believes no reasonable trier of fact could reach another conclusion than that Scott, who worked in Salem's business office, improperly obtained the Salem patient information found at her home.

**B) CHS had knowledge of MCS's Breaches**

In the same way that the pleadings and depositions, when considered together, lead to no other conclusion than that Scott took PHI from Salem, the totality of the material presented by the Parties in this case reveals that MCS knew of Scott's actions prior to the termination of Subject Contract on February 4, 2005. Plaintiff makes much of the Detectives' inability to recall, seven years later, precisely who informed whom regarding the Salem patient information recovered at Scott's home. D.E. 257 at 12. Nevertheless, Salem's February 4, 2005 termination letter provides no alternative explanation than that Salem terminated the contract with knowledge of Scott's actions. The letter states, in relevant part, "It is our understanding from the Delaware State Police Department that Nichole Scott wrongly and without authorization removed patient protected health information from The Memorial Hospital of Salem County and used such confidential information to obtain credit cards which she subsequently used to make purchases."

D.E. 112-16. Regardless of whether Salem was made aware of Scott's actions via Delaware State Police's phone calls to Don Bevers, Salem's Assistant Chief Financial Officer, the copies of checks sent by Salem to Bevers, phone calls from Salem patients that were victims of Scott's theft to Bevers, or Delaware State Police's forwarding of Scott's arrest report to Salem, the reasons outlined in the termination letter unequivocally indicate that CHS had knowledge of Scott's actions in violation of the HIPAA Addendum. D.E. 267 (citation omitted); D.E. 112-16.

## C) Scott's Conduct was a Material Breach of the HIPAA Addendum

The HIPAA Addendum clearly states that a "Business Associate," such as MCS "may not use or otherwise disclose Protected Health Information...it receives from the Hospital for any purpose" other than as allowed by the PSA or permitted by HIPAA Regulations. D.E. 252 at 10-11. MCS argues that the Salem patient information, including credit cards, checks and social security numbers, recovered from Scott's home was not PHI. D.E. 257 at 16. The Plaintiff highlights:

> "According to HIPAA, PHI is 'information that...: (1) Is created or received by a health care provider, ... and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past present or future payment for the provision of healthcare to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.'"

Id. (citation omitted).

However, Plaintiff's evidence does more harm than good to its assertion. Checks, credit card information, and social security numbers, when considered together, certainly are "related to the past, present or future payment for the provision of healthcare to an individual" and identify or give information that could be used to identify Salem patients. After all, "identity theft is big

business" and the information recovered at Scott's house could be used to identify patients. D.E. 258 at 2.

Considering that the patient information recovered by Delaware State Police from Scott's home was PHI, the Court finds that CHS properly terminated the Subject Contract with MCS for violations of the HIPAA Addendum. MCS hired Scott, through a temporary placement agency, to work at Salem. The HIPAA Addendum applied to MCS and its employees. D.E. 242-2. The removal of patient checks, credit card information, and social security numbers was certainly a breach of the plain language of the HIPAA Addendum, which does not allow the use or disclosure of PHI for any purposes other than those permitted by the PSA or HIPAA Regulations. D.E. 252 at 10-11.

Hospital companies, such as CHS, hire companies like MCS to aid with many aspects of the provision of healthcare in a community. The provision of healthcare necessarily involves handling patients' most sensitive information. HIPAA Regulations and contract provisions like the HIPAA Addendum exist to protect this important patient information. Hospital companies like the Defendant must ensure patients' safety and the security of their information above almost all else. As a result, when Plaintiff MCS's employee, Scott, violated the essential trust patients place in their healthcare providers and healthcare providers place in the companies with which they contract to aid in the provision of healthcare, CHS properly terminated its contract with MCS.

## CONCLUSION

THE COURT has considered the motion, responses, and Magistrate's Report and Recommendation on the Motion **(D.E. 267)**, filed on **April 2, 2013** and the pertinent portions of

the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that:

(1) Magistrate's Report and Recommendation on Defendant's Renewed Motion for Summary Judgment **(D.E. 267)** is ADOPTED in part;

(2) Defendant's Renewed Motion for Final Summary Judgment **(D.E. 252)** is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th day of June, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record